# Exhibit 2

STATE OF MINNESOTA                                DISTRICT COURT

COUNTY OF RAMSEY                                  SECOND JUDICIAL DISTRICT

---

Agape Home Care Services, LLC                    Court File No.: _____
                                                 Case Type: Civil/Miscellaneous
              Plaintiff,

v.

Minnesota Department of Human Services and       **COMPLAINT**
Acting Commissioner Shireen Gandhi, in her
official capacity,

              Defendants.

---

Plaintiff Agape Home Care Services, LLC, ("Agape") as and for its Complaint against Defendants Minnesota Department of Human Services and Acting Commissioner Shireen Gandhi, states and alleges as follows:

## INTRODUCTION

1.      This action challenges Defendant Minnesota Department of Human Services ("DHS's") ongoing 100% payment withhold against Agape under Minn. Stat. § 256B.064, subd. 2(b), and 42 C.F.R. § 455.23.

2.      DHS imposed the withhold based on an alleged "credible allegation of fraud." However, DHS's Notice does not identify any Agape-specific false claim, billing irregularity, documentation deficiency, audit finding, client, employee, service date, provider number, business unit, or other provider-specific conduct by Agape that DHS contends is fraudulent.

3.      Instead, DHS's Notice identifies alleged conduct by a different provider, Healthy Living Home Health Care LLC ("Healthy Living"), and states that Healthy Living shares common ownership with Agape.

4. Agape does not ask this Court to decide whether DHS may ever consider common ownership as one factor in a provider-specific credible-allegation review. Agape alleges that common ownership alone is not a substitute for the review required by Minn. Stat. § 256B.064 and 42 C.F.R. § 455.23.

5. Minn. Stat. § 256B.064 requires DHS to determine that there is a credible allegation of fraud for which an investigation is pending. The statute further provides that allegations are credible only when they have an indicium of reliability and the state agency has reviewed all allegations, facts, and evidence carefully and acted judiciously on a case-by-case basis.

6. The federal regulation incorporated into Minnesota's payment-withhold framework, 42 C.F.R. § 455.23, requires DHS to determine whether good cause exists not to suspend payments or to suspend payments only in part. That regulation also recognizes the provider's right to submit written evidence for consideration.

7. Agape submitted written evidence and requested that DHS lift the withhold or, at minimum, narrow the withhold through partial suspension, claim-level review, prepayment review, targeted documentation review, or another less restrictive alternative.

8. DHS has not issued a reasoned written decision identifying any Agape-specific credible allegation of fraud, addressing Agape's written evidence, explaining why good cause does not exist, or explaining why a 100% withhold is necessary instead of a partial suspension or less restrictive alternative.

9. DHS's ongoing withhold is not merely financially harmful. It threatens Agape's ability to meet payroll, retain staff, continue operations, and provide continuity of care to vulnerable Minnesota Health Care Programs ("MHCP") recipients.

2

10.     Agape brings this action to require DHS to comply with the specific statutory and regulatory limits governing the withhold remedy DHS chose to invoke. Agape seeks declaratory relief, mandamus compelling DHS to perform clear legal duties, and injunctive relief preventing DHS from maintaining an ultra vires 100% withhold without complying with Minn. Stat. § 256B.064 and 42 C.F.R. § 455.23.

## PARTIES

11.     Plaintiff/Petitioner Agape Home Care Services, LLC is a Minnesota limited liability company providing home care and related services to MHCP recipients in Minnesota.

12.     Agape's principal place of business is located in Hennepin County, Minnesota.

13.     Agape is enrolled as an MHCP provider. Agape's provider number identified in DHS's Notice is Provider No. 597679100.

14.     Defendant/Respondent Minnesota Department of Human Services is the state agency responsible for administering MHCP, including Medical Assistance, and for overseeing MHCP provider payments.

15.     Defendant/Respondent Shireen Gandhi is the Acting Commissioner of DHS and is sued in her official capacity only.

## JURISDICTION AND VENUE

16.     This Court has subject-matter jurisdiction under Minn. Stat. ch. 555, Minn. Stat. ch. 586, and the Court's equitable authority to declare and restrain ultra vires agency action.

17.     This Court has jurisdiction to declare the parties' rights, status, and legal relations under Minn. Stat. § 256B.064 and 42 C.F.R. § 455.23.

3

18.     This Court has jurisdiction to issue a writ of mandamus compelling DHS and the Commissioner to perform acts that the law specially enjoins as duties resulting from their public office, trust, or station.

19.     Agape has no plain, speedy, and adequate remedy in the ordinary course of law. DHS has taken the position that no contested case hearing is available to challenge the temporary payment withhold itself, and the Office of Administrative Hearings lacks jurisdiction to reverse or adjudicate the withhold itself.

20.     Venue is proper in Ramsey County because DHS and the Acting Commissioner maintain their principal offices in Ramsey County, and the challenged decision was issued, implemented, and continues to be enforced from Ramsey County.

## FACTUAL ALLEGATIONS

### A. Agape's Separate Provider Status

21.     Agape is a legally separate entity from Healthy Living.

22.     Agape and Healthy Living are separately organized entities.

23.     Agape and Healthy Living maintain separate MHCP provider enrollments.

24.     Agape submits claims for services provided by Agape to Agape's own clients.

25.     Agape maintains its own provider records, client records, billing records, staffing records, and operational records.

26.     Agape has separate clients from Healthy Living.

27.     Agape has separate staff from Healthy Living.

28.     Agape has separate payroll and operational obligations from Healthy Living.

29.     Agape has separate service authorizations and service documentation from Healthy Living.

30.    To the extent DHS contends Agape and Healthy Living share ownership or some other relationship, that relationship does not merge the two providers into one entity and does not relieve DHS of its statutory obligation to make a provider-specific, case-by-case credible-allegation determination as to Agape.

31.    DHS has not identified any Agape-specific claim that DHS contends is false, unsupported, duplicative, medically unnecessary, or not provided as billed.

32.    DHS has not identified any Agape-specific audit finding.

33.    DHS has not identified any Agape-specific documentation defect.

34.    DHS has not identified any Agape-specific timesheet anomaly.

35.    DHS has not identified any Agape-specific care plan deficiency.

36.    DHS has not identified any Agape-specific service recipient whose claims are allegedly fraudulent.

37.    DHS has not identified any Agape-specific employee allegedly involved in fraudulent billing.

38.    DHS has not identified any Agape-specific service date allegedly connected to fraudulent billing.

39.    DHS has not identified any Agape-specific business unit or claim type that is allegedly connected to fraudulent billing.

**B.  DHS's September 26, 2025, Notice of Payment Withhold**

40.    On or about September 26, 2025, DHS issued a Notice of Payment Withhold to Agape regarding Provider No. 597679100.

41.    The Notice stated that DHS would withhold all MHCP payments to Agape effective September 23, 2025.

42. The Notice stated that the withhold was based on an alleged credible allegation of fraud for which an investigation was pending.

43. The Notice stated, in substance, that DHS had information concerning Healthy Living and that Healthy Living shared common ownership with Agape.

44. The Notice did not identify any specific alleged fraud by Agape itself.

45. The Notice did not identify any Agape claim that DHS contends was false or fraudulent.

46. The Notice did not identify any Agape billing pattern that DHS contends was fraudulent.

47. The Notice did not identify any Agape client, employee, service date, provider number, business unit, or claim type that DHS contends was connected to fraud.

48. The Notice did not provide Agape with sufficient provider-specific information to determine what Agape claims, claim types, or business units were allegedly implicated by the withhold.

49. The Notice stated that the withhold would continue until DHS or a prosecuting authority determined there was insufficient evidence of fraud, or until legal proceedings relating to the alleged fraud were completed.

50. The Notice did not identify any end date for the withhold.

51. The Notice advised Agape that it could submit written evidence for consideration.

### C. Agape's Written Good-Cause Submission

52. On or about October 6, 2025, Agape submitted a written response to DHS.

53. Agape's written response asserted good cause for DHS to lift the withhold.

6

54.    Agape explained that DHS had not identified any Agape-specific false claim, billing irregularity, audit finding, documentation defect, or fraudulent conduct.

55.    Agape explained that the allegations identified in the Notice concerned Healthy Living, not Agape.

56.    Agape explained that Agape had acted in good faith and had provided authorized services to eligible clients.

57.    Agape explained that a 100% withhold would jeopardize Agape's ability to pay staff and maintain services.

58.    Agape explained that a 100% withhold would threaten continuity of care for vulnerable clients, including clients who may not have readily available alternative providers.

59.    Agape requested that DHS lift the withhold.

60.    In the alternative, Agape requested that DHS narrow the withhold through a less restrictive alternative, including partial suspension, claim-level review, prepayment review, targeted documentation review, or another measure that would protect MHCP funds without destroying Agape's ability to operate.

61.    Agape's written submission triggered DHS's obligation to consider the submission under Minn. Stat. § 256B.064 and 42 C.F.R. § 455.23.

62.    Agape's written submission also triggered DHS's obligation to evaluate whether good cause existed not to suspend payments or to suspend payments only in part.

### D. DHS's Failure to Issue a Reasoned Provider-Specific Decision

63.    DHS did not lift the withhold.

64.    DHS has not provided Agape with a reasoned written determination identifying any Agape-specific credible allegation of fraud.

65.    DHS has not provided Agape with a reasoned written determination explaining what allegations, facts, and evidence DHS reviewed as to Agape.

66.    DHS has not provided Agape with a reasoned written determination explaining how DHS acted judiciously on a case-by-case basis as to Agape.

67.    DHS has not provided Agape with a reasoned written determination addressing Agape's evidence that Agape and Healthy Living are separate providers with separate clients, claims, staff, and records.

68.    DHS has not provided Agape with a reasoned written determination addressing whether good cause exists to lift the withhold under 42 C.F.R. § 455.23(e).

69.    DHS has not provided Agape with a reasoned written determination addressing whether good cause exists to suspend payments only in part under 42 C.F.R. § 455.23(f).

70.    DHS has not provided Agape with a reasoned written determination explaining why partial suspension, prepayment review, claim-level review, targeted documentation review, or another less restrictive alternative would be insufficient to protect MHCP funds.

71.    DHS has not provided Agape with a meaningful administrative conference or review process regarding the withhold.

72.    DHS's counsel informed Agape's counsel that DHS could not provide further information regarding the ongoing investigation.

73.    DHS's counsel also indicated that DHS did not have the resources to schedule a conference to address Agape's request.

74.    DHS's failure to perform and communicate the required review leaves Agape subject to an ongoing 100% withhold without a provider-specific explanation, without a timetable, and without a meaningful administrative path for relief.

### E. Harm to Agape and Beneficiaries

75. Agape relies on MHCP payments to operate and provide services.

76. DHS's 100% withhold has deprived Agape of substantially all payments for services provided to MHCP recipients.

77. As of the date of this pleading, DHS has withheld substantial MHCP payments from Agape, in an amount to be determined through discovery and DHS payment records.

78. The ongoing withhold threatens Agape's ability to meet payroll.

79. The ongoing withhold threatens Agape's ability to retain direct care staff.

80. The ongoing withhold threatens Agape's ability to maintain services to vulnerable clients.

81. The ongoing withhold threatens Agape's ability to pay rent, vendors, insurance, payroll taxes, and other operating obligations.

82. Agape serves medically fragile, elderly, disabled, and/or otherwise vulnerable clients who require consistent services.

83. If Agape cannot pay staff, Agape's clients may lose continuity of care.

84. If Agape is forced to close or reduce services, clients may be displaced, forced to find substitute providers, or left without timely care.

85. The harm caused by the withhold is not limited to delayed payment. The withhold threatens business closure, loss of workforce, loss of goodwill, reputational injury, disruption to clients, and interruption of medically necessary services.

86. These harms are immediate, ongoing, and irreparable.

**COUNT I**
**DECLARATORY JUDGMENT / ULTRA VIRES AGENCY ACTION**
**Minn. Stat. ch. 555; Minn. Stat. § 256B.064; 42 C.F.R. § 455.23**

87. Agape realleges paragraphs 1 through 86 as though fully set forth herein.

88. An actual, present, and justiciable controversy exists between the parties concerning DHS's authority to impose and continue a 100% payment withhold against Agape.

89. Agape's rights, status, and legal relations are affected by Minn. Stat. § 256B.064 and 42 C.F.R. § 455.23.

90. DHS is an administrative agency and has only the authority granted to it by statute.

91. DHS may not enlarge its authority beyond the authority granted by the Legislature.

92. DHS may not rely on general program-integrity authority to avoid the specific statutory and regulatory requirements governing the payment-withhold remedy it chose to invoke.

93. Minn. Stat. § 256B.064, subd. 2(b), permits DHS to withhold payments without advance notice only when the commissioner determines that there is a credible allegation of fraud for which an investigation is pending.

94. Minn. Stat. § 256B.064 requires a credible allegation to have an indicium of reliability and requires DHS to review all allegations, facts, and evidence carefully and act judiciously on a case-by-case basis.

95. 42 C.F.R. § 455.23 requires DHS to determine whether good cause exists not to suspend payments or to suspend payments only in part.

96. 42 C.F.R. § 455.23 recognizes that written evidence submitted by the provider may support removal of a suspension or partial suspension.

97. DHS acted beyond its statutory and regulatory authority by imposing and continuing a 100% payment withhold against Agape without identifying any Agape-specific credible allegation of fraud.

98. DHS acted beyond its statutory and regulatory authority by treating alleged fraud by Healthy Living, plus common ownership, as a substitute for the provider-specific, case-by-case review required as to Agape.

99. DHS acted beyond its statutory and regulatory authority by failing to provide a reasoned determination addressing Agape's written evidence.

100. DHS acted beyond its statutory and regulatory authority by failing to evaluate and communicate whether good cause exists to lift the withhold or suspend payments only in part.

101. DHS acted beyond its statutory and regulatory authority by maintaining a 100% withhold without explaining why partial suspension, prepayment review, claim-level review, targeted documentation review, or another less restrictive alternative would not protect MHCP funds.

102. Agape is entitled to a declaration that DHS may not impose or continue a 100% payment withhold against Agape based solely on alleged fraud by a separate entity and common ownership, absent a provider-specific credible-allegation determination as to Agape that satisfies Minn. Stat. § 256B.064 and 42 C.F.R. § 455.23.

103. Agape is entitled to a declaration that DHS must consider Agape's written evidence and determine whether good cause exists to lift the withhold or suspend payments only in part.

104. Agape is entitled to a declaration that DHS must identify, at least in general terms consistent with any legitimate limits on an ongoing investigation, the nature of the allegations against Agape and the types of Agape claims or business units to which any withhold applies.

105. Agape is entitled to a declaration that the current 100% payment withhold, as applied to Agape on the facts alleged herein, is unlawful and ultra vires.

11

## COUNT II
### PETITION FOR WRIT OF MANDAMUS
#### Minn. Stat. §§ 586.01-.12

106.    Agape realleges paragraphs 1 through 105 as though fully set forth herein.

107.    Minn. Stat. § 586.01 authorizes mandamus to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station.

108.    DHS and the Acting Commissioner have a clear legal duty to perform the process required by Minn. Stat. § 256B.064 and 42 C.F.R. § 455.23.

109.    DHS and the Acting Commissioner have a clear legal duty to review all allegations, facts, and evidence carefully and act judiciously on a case-by-case basis when determining whether a credible allegation of fraud exists as to Agape.

110.    DHS and the Acting Commissioner have a clear legal duty to consider written evidence submitted by Agape.

111.    DHS and the Acting Commissioner have a clear legal duty to evaluate whether Agape's written evidence supports lifting the withhold.

112.    DHS and the Acting Commissioner have a clear legal duty to evaluate whether good cause exists not to suspend payments under 42 C.F.R. § 455.23(e).

113.    DHS and the Acting Commissioner have a clear legal duty to evaluate whether good cause exists to suspend payments only in part under 42 C.F.R. § 455.23(f).

114.    DHS and the Acting Commissioner have a clear legal duty to determine whether partial suspension, prepayment review, claim-level review, targeted documentation review, or another less restrictive alternative would adequately protect MHCP funds.

115.    DHS and the Acting Commissioner have a clear legal duty to issue a decision sufficient to show that they performed the required review.

12

116.    Agape does not ask this Court to dictate the ultimate discretionary outcome of DHS's review.

117.    Agape asks this Court to compel DHS and the Acting Commissioner to perform the review the law requires.

118.    DHS and the Acting Commissioner have failed to perform those duties.

119.    As a result, Agape has suffered a public wrong specifically injurious to Agape, including the ongoing deprivation of all MHCP payments, risk of business closure, loss of staff, and disruption to vulnerable clients who depend on Agape's services.

120.    Agape has no plain, speedy, and adequate remedy in the ordinary course of law because DHS has not provided a contested case hearing or other administrative forum to challenge the payment withhold itself, and OAH lacks jurisdiction over the withhold itself.

121.    Agape is entitled to an alternative writ of mandamus directing DHS and the Acting Commissioner to perform the required statutory and regulatory review and to file and serve a written return by a date certain.

## COUNT III
## TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTIVE RELIEF

122.    Agape realleges paragraphs 1 through 121 as though fully set forth herein.

123.    DHS's ongoing 100% withhold is causing immediate and irreparable harm to Agape.

124.    The harm to Agape includes loss of operating revenue, inability to meet payroll, loss of staff, loss of goodwill, reputational injury, and threatened business closure.

125.    The harm to Agape's clients includes threatened disruption of services and loss of continuity of care.

126. Agape has no adequate remedy at law because money damages after the fact would not restore Agape's workforce, goodwill, operating capacity, or client continuity if the business collapses.

127. The balance of harms favors injunctive relief because DHS can protect MHCP funds through narrower measures, including partial suspension, prepayment review, claim-level review, targeted documentation review, or other prospective controls.

128. The public interest favors requiring DHS to follow the statutes and regulations governing payment withholds.

129. The public interest also favors continuity of care for vulnerable MHCP recipients.

130. Agape is likely to succeed on the merits because DHS has not identified any Agape-specific credible allegation of fraud and has not performed or communicated the required good-cause and partial-suspension review.

131. Agape is entitled to temporary, preliminary, and permanent injunctive relief enjoining DHS from maintaining the current 100% payment withhold unless and until DHS complies with Minn. Stat. § 256B.064 and 42 C.F.R. § 455.23.

132. In the alternative, Agape is entitled to injunctive relief requiring DHS to convert the current 100% withhold to a narrower interim measure while DHS performs the required provider-specific review.

### COUNT IV
### ALTERNATIVE PROCEDURAL DUE PROCESS CLAIM
### U.S. Const. amend. XIV; Minn. Const. art. I, § 7

133. Agape realleges paragraphs 1 through 132 as though fully set forth herein.

134. This count is pleaded in the alternative.

14

135. Agape acknowledges that DHS may argue that providers do not have a protected property interest in continued MHCP payments during a pending fraud investigation when the withhold is lawfully authorized by statute.

136. Agape alleges, however, that the challenged withhold is not lawfully authorized by statute because DHS failed to satisfy the statutory and regulatory prerequisites for imposing and maintaining a 100% withhold against Agape.

137. DHS has withheld all payments to Agape without identifying any Agape-specific credible allegation of fraud.

138. DHS has withheld all payments to Agape without providing a meaningful provider-specific review of Agape's written evidence.

139. DHS has withheld all payments to Agape without providing a reasoned good-cause or partial-suspension decision.

140. DHS's action has deprived Agape of payments for services it provided, impaired Agape's provider status in practical effect, damaged Agape's goodwill and reputation, and threatened Agape's ability to continue operating.

141. Under these circumstances, and to the extent the Court determines constitutional adjudication is necessary, DHS has deprived Agape of protected interests without constitutionally sufficient process.

142. Agape seeks declaratory and injunctive relief on this claim only to the extent necessary and appropriate.

### COUNT V
### MINNESOTA CONSTITUTIONAL REMEDY CLAUSE
### Minn. Const. art. I, § 8

143. Agape realleges paragraphs 1 through 142 as though fully set forth herein.

15

144. Article I, § 8 of the Minnesota Constitution provides that every person is entitled to a certain remedy in the laws for all injuries or wrongs which the person may receive to person, property, or character.

145. DHS's ongoing 100% withhold has injured Agape's property, business, reputation, goodwill, workforce, and ability to provide services.

146. DHS has taken the position that Agape has no contested case remedy or other immediate administrative forum to challenge the withhold itself.

147. To the extent DHS contends that no statutory or administrative remedy is available, Agape seeks equitable relief under Minnesota law to prevent DHS from maintaining an ultra vires withhold without any meaningful remedy.

148. Agape does not seek damages under the Minnesota Constitution. Agape seeks declaratory, mandamus, and injunctive relief requiring DHS to act within the authority granted by law.

## PRAYER FOR RELIEF

WHEREFORE, Agape respectfully requests that the Court enter judgment in its favor and grant the following relief:

1. Declare that DHS may not impose or continue a 100% payment withhold against Agape based solely on alleged fraud by Healthy Living and common ownership, absent a provider-specific credible-allegation determination as to Agape that satisfies Minn. Stat. § 256B.064 and 42 C.F.R. § 455.23;

2. Declare that DHS must review all allegations, facts, and evidence carefully and act judiciously on a case-by-case basis as to Agape;

3. Declare that DHS must consider Agape's written evidence and determine whether good cause exists to lift the withhold or suspend payments only in part;

16

4. Declare that DHS must identify, at least in general terms consistent with legitimate investigative limits, the types of Agape claims or business units to which any withhold applies;

5. Declare that DHS's current 100% payment withhold against Agape is unlawful and ultra vires unless and until DHS complies with the statutory and regulatory requirements governing the withhold;

6. Issue an alternative writ of mandamus requiring DHS and the Acting Commissioner to perform the mandatory duties described above and to file and serve a written return by a date certain;

7. Temporarily, preliminarily, and permanently enjoin DHS from maintaining the current 100% payment withhold against Agape unless and until DHS complies with Minn. Stat. § 256B.064 and 42 C.F.R. § 455.23;

8. In the alternative, order DHS to convert the current 100% withhold to a narrower interim measure, including partial suspension, prepayment review, claim-level review, targeted documentation review, or another less restrictive measure sufficient to protect MHCP funds while preserving Agape's ability to operate;

9. Award Agape its costs and disbursements as allowed by law;

10. Award Agape reasonable attorney's fees only to the extent authorized by statute, rule, contract, or other applicable law; and

11. Grant such other and further relief as the Court deems just and equitable.

17

Dated: June 11, 2026

DOUGHERTY, MOLENDA, SOLFEST, HILLS & BAUER, P.A.

s/ *Adam P. Richard*

Matthew J. Schaap, I.D. 323421
Adam P. Richard, I.D. 402411
14985 Glazier Avenue, Suite 525
Apple Valley, MN 55124
(952) 432-3136
mschaap@dmshb.com
arichard@dmshb.com

**Attorneys for Plaintiff**

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that, under Minn. Stat. § 549.211, subd. 3, costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party in this litigation for violations of Minn. Stat. § 549.211.

s/ *Adam P. Richard*

Adam P. Richard, I.D. 402411

18